Court of Appeal of Louisiana. First Circuit.
March 4, 1935.

Burns & Pierson, of Ponchatoula, for appellant.

M. C. Rownd, of Springville, for appellees.

ELLIOTT, Judge.

A. B. Davis, trading under the name A. B. Davis Association, brought suit against Oliver L. Demars and Moses J. Demars to have a certain act in authentic form called by the parties a sale of land from Oliver L. Demars to Moses J. Demars, declared to be a simulation, and, if not a simulation, then a sale made in fraud of creditors. The price of the purported sale is stated in the act to be $1,-000, of which $845.02 is said to have been paid in cash; and in payment of the balance, to wit, $154.98, Moses J. Demars assumed the payment of a mortgage said to exist on the property for that amount. The act in question was duly recorded in the conveyance records of Livingston parish.

Oliver L. Demars and Moses J. Demars, appearing through the same counsel, filed an answer, in which they deny the averments of simulation and fraud alleged in the petition of the plaintiff, and pray that his demand be rejected. There was judgment in favor of the defendants as prayed for. The plaintiff has appealed.

Defendants have not favored us with a brief in support of their defense and the judgment appealed from. The judgment says it is based on oral reasons, as to which we have no information. The minutes show that M. C. Rownd, attorney, filed an answer in the suit for the defendants, and the note of testimony shows that he appeared as their attorney on the trial, but the answer is not signed by him nor by anybody else. The customary affidavit to the answer is signed by M. C. Rownd as attorney for the defendants. No objection to the answer having been made on the ground that it was not signed, we pass the matter and act on the case as if the answer had been duly signed.

On the trial of the case Oliver L. Demars and Moses J. Demars, in explaining the transaction between them, both testified of their own will and accord, without objection, that the $845.02, said in the act to have been paid in cash, was not paid in cash, that no money was paid, and that the $845.02 and $154.28 constituted a sum of money which Moses J. Demars had loaned to his father, Oliver L. Demars, some five or six years before the act was passed. The exact date on which the money is claimed to have been loaned cannot be determined from their testimony, but, according thereto, it must have been between five and six years previous to the date of the act which is the subject of plaintiff's attack. The act bears date September 18, 1933. The defendants themselves unreservedly and voluntarily show, in explaining the transaction, that it was intended as a giving in payment. As, under their own testimony, it was a giving in payment, it must meet the requirements of the law on that subject. One of the essentials of a giving in payment is that it "is made only by delivery." Civil Code, art. 2656. The only delivery that can be said to have existed in this case is the one provided for by the Civil Code, art. 2479, according to which the law considers delivery as always accompanying the public act which transfers the property. In the absence of any evidence offsetting this presumption, we will act on the case as if delivery took place, but the law contains another provision. Civil Code, art. 2658. When the debtor is insolvent, "the law forbids to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due." In this case, according to the undisputed testimony, Oliver L. Demars owes other parties besides Davis, and at the time of the transaction in question he owed more than he had property to pay, and was therefore insolvent.

But we prefer to rest our conclusion and decree on another ground. We are satisfied that the act was not a giving in payment nor a sale; that it was and is nothing more than a simulation, in which there was no intent to sell or pay, the only purpose being to conceal the property of the debtor from the plaintiff and prevent, if possible, its seizure and sale to pay the judgments which the plaintiff was about to obtain against Oliver L. Demars.

We take it that the cause of this controversy is shown by the record to be four notes held by A. B. Davis, plaintiff, against Oliver L. Demars, defendant, on which he had brought suit and was pressing to judgment. One of the notes was for $240, with interest and attorney's fees, another for $150.50, with interest and attorney's fees, another for $90, on which there was a balance due of $55, with interest and attorney's fees, and another for $60 on which there was a balance due of $43.85, with interest and attorney's fees. These notes, counting interest and attorney's fees, made an aggregate amount upwards of $500. These suits were all filed during September and November, 1933. In two or three days after the first two suits were filed, Moses J. Demars called on Davis and seemed to be angry with him for having sued his father. After discussing the suits, he left, and within two or three days thereafter the act was passed from Oliver L. Demars to Moses J. Demars which is the object of this suit. The law provides that "Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions, or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence." Civ. Code, arts. 1848, 1849, 2288.

The evidence shows that Oliver L. Demars had no property except these two small tracts of land he claims to have sold to Moses J. Demars, his son. The testimony is that he had no other land, and, if he owned any movable property, rights, or credits, the evidence does not indicate it. And when a man, pressed with debts which he is unable to pay, makes disposition of all his property in one transaction to a member of his family, one of his household, his act is looked on with suspicion.

The record shows that Oliver L. Demars bought the parcel of land containing 14.99 acres from E. T. Cullom on August 19, 1912, for $225. Of this amount $115 was paid in cash, and the balance on terms of credit. This was about twenty-one years previous to the transaction between him and Moses J. Demars. He bought the tract containing 80 acres from W. M. Mitchell for $2,400 cash on July 1, 1926, which was but little more than seven years previous to the so-called sale from him to Moses J. Demars. The titles show that Oliver L. Demars paid out $2,625 in buying these farms, but he ostensibly transfers them to his son in payment at a valuation of $1,000, which was $1,600 less than he had paid for same. No evidence was introduced to show that the farms had depreciated in value or that anything, such as timber or improvements, had been removed therefrom. Moses J. Demars testifies that the property was worth only the amount for which he took it in payment at the time of the transaction

in question; that the sum for which he took the property in payment was more than his father could have gotten out of it if he had sold it; that there was no sale for it, etc.

"Q. What I want to know is wasn't that $1,000.00 an insufficient price for that land? A. I don't know.

"Q. Is that what you thought it was worth then or did you think it was worth more than that? A. That is all I thought it was worth at the time."

According to his testimony, he had advanced his father between $2,000 and $2,500 some years before, and it had never been repaid. Moses J. Demars testified that there was a mortgage on the property to the extent of $198 which he assumed. The act says the mortgage assumed was for $154.98, but no mortgage for either sum mentioned was shown in evidence. The testimony of Moses J. Demars was not objected to, so we take it into account. If such a mortgage existed on the property, the mortgage itself was the best evidence, but we take into account the parol evidence on the subject received without objection. The testimony of Moses J. Demars concerning matters which men do ordinarily remember well is often not answered except by saying, "I don't know," "I can't remember," or some other such evasive term inappropriate to the situation. Asked how old he was, and he answered: "29 or 30 years old. I am not positive." In answer to the next question, he said he was born on November 1, 1902, which would make him older than he estimated. He has lived all his life with his father, and had been engaged in farming for about sixteen years. The place on which his father lived belonged to his mother. The farm he cultivated belonged to her. He and his father worked together in the same field. He could not remember how much he had made in any one year. Questioned about the last three years, he admitted that they had not been good years for the farmer, but that they were not failures. According to his testimony and that of his father, the father was never able to make anything but got deeper in debt. The son appears to have been the only one that had any money. Moses J. Demars, asked how this came about, replied that he had no family to feed and take care of. He speaks of having had a bank account a few years past and of having had money in bank and that at one time he had $1,600. But he produced no bank book, no check, and did not call the cashier or the officer of any bank to support his claim. He testifies contradictorily in regard to the consideration which entered into the giving in payment set up under his father. Questioned by plaintiff's counsel concerning the consideration stated in the act from his father to himself and as to what debts had entered into it:

"Q. The $1,000.00 you recite in that deed is the $1,000.00 you gave that check for on the bank? A. No. The $1,000.00 written in that deed is $400.00 I gave a check for before. That was in 1927 or 1928 when I took up the second mortgage; then from time to time I paid interest to the bank on his note.

"Q. That is what totaled the amount in the deed. The amount you had advanced your father from time to time in the past and the second mortgage you took up for him and all that was several years before this deed was executed and signed? A. Yes, Sir. That ran from 1926 on down to 1930.

"Q. Which was the last time you paid money for him? A. Yes, Sir."

The above subject-matter had reference to testimony previously given by Moses J. Demars in which he had stated that he first gave his father a check for $400 with which to pay a mortgage note for that amount bearing on the property in question, and then afterwards gave him another check for $1,000 to pay the balance due on another mortgage note for $1,600. The matter was too clear to be misunderstood. But, when recalled and examined by his own attorney, he testified just as plainly and unreservedly that the whole of a mortgage note for $1,600, on which he says he gave his father a check for $1,000 to pay the balance due on it several years before, was included in the $1,000 purchase price. Reminded by counsel for plaintiff of his previous testimony as to how the $1,000 had been made up, he returned to his first testimony. Taken in hand again by his own attorney, he reaffirmed that the note for $1,600 entered into the amount.

■ Oliver L. Demars testified that he thought he owed his son about $2,500 or $2,600, made up of moneys which his son had loaned years ago; that, in order to pay the balance due on the note for $1,600, which was secured by mortgage on the property involved in the present suit, his son gave him a check for $1,000. He took the check to the bank and paid the balance due on the note, received the note from the bank, and turned it over to his son. This is said to have taken place five or six years previous to the date of the transaction which is the object of the present attack. The check was not preserved; it is said to have been destroyed.

The record contains copies of the two mortgage notes which Moses J. Demars claim-

ed to have loaned his father the money to pay. One of them is for $400, bears date July 1, 1926, and is payable six months after date. The other is for $1,600, and bears date same as the other, July 1, 1926, payable eleven months after date, both secured by mortgage on the property in question. It was five or six years after the last maturity before the act was passed which provoked the present suit. There was no apparent source of income except the farm. The area cultivated by father and son or by either of them does not appear, but, in order for it to reasonably appear that Moses J. Demars had $400 at one time and $1,000 soon afterwards, together with other amounts spoken of as money made by him on his mother's farm which he did not own, and cultivated with his father, it must certainly be supposed that the farm made a profit; but, as the evidence justifies the conclusion that the husband administered the farm, the fruits thereof belonged to him. Civil Code, arts. 2385, 2386, 2402.

We take it that notes, one for $400 and another for $1,600, were paid in 1926 or 1927, but it is our conclusion that the money that went to pay the notes belonged to Oliver L. Demars; that when suit was brought by Davis against Oliver L. Demars some five or six years later, the father and son entered into a plan to defeat Davis by placing the property of the father beyond his reach. The plan took the form of a giving in payment from Oliver L. Demars to Moses J. Demars. The act was made to say that $845.02 was paid in cash, when it was not done, and $154.98 of the giving in payment was stated to be debt secured by mortgage on the property assumed by Moses J. Demars, and, although Moses J. Demars testified to the existence of such a mortgage, no mortgage of that kind on the property was offered in evidence. It is our conclusion that the pretended giving in payment is a mere simulation, and as such null and void and without force or effect as an act.

For these reasons it is ordered, adjudged, and decreed that the judgment appealed from herein be annulled, avoided, and set aside, and the absolute nullity is now decreed of the act in question. It is further decreed that the said act, bearing date September 18, 1933, in authentic form, executed by Oliver L. Demars in favor of Moses J. Demars, before John S. Nelson, clerk of court and ex officio notary public in and for the parish of Livingston, and whereby Oliver L. Demars claims to transfer to Moses J. Demars the E. ½ of the N. E. ¼ of section 25, Tp. 7 S., R. 6 E., con-

taining 80 acres, also a certain parcel of land described as beginning at a post at the southwest corner of the 20-acre tract sold by E. T. Cullom to Mr. Clause and now owned by William Jenkins; thence south 57° 3.17 chains, set corner post; thence south 83° and 30′ west 8.79 chains, set corner post; thence north 8° 45′ east 22.72 chains, set corner post; thence south 47° 10′ east 8.20 chains, and set corner post; thence south 63° 45′ east 4.58 chains, and set corner post; thence south 33′ west 15.67 chains to place of beginning, containing 14.99 acres more or less, in headright 41, Tp. 7 S., R. 6 E., situated in the parish of Livingston, less and excepted therefrom a strip 69 feet in width and 328 feet in depth along the east side of said last-described tract—is a simulation, and as such is null and void. And the registry made of the same in the conveyance records in the parish of Livingston is ordered canceled. The defendants Oliver L. Demars and Moses J. Demars to pay the cost in both courts.

MOUTON, J., not participating.